UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

STEVEN BEATTIE,

                Plaintiff,

v.                                       Case No.  5:09-cv-5-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social

Security (the "Commissioner") denying his application for a period of disability and

disability insurance benefits.  (Doc. 1.)  The Commissioner has answered (Doc. 9) and

both parties have filed briefs outlining their respective positions.  (Docs. 16 & 19.)  For

the reasons discussed below the Commissioner's decision is due to be **AFFIRMED.**

## I.  PROCEDURAL HISTORY

On August 13, 2004, Plaintiff filed an application for a period of disability and

disability insurance benefits, claiming a disability onset date of March 18, 2002. (54-62.)

After Plaintiff's application was denied initially and upon reconsideration, Plaintiff timely

requested a hearing before an Administrative Law Judge ("ALJ").  (R. 42.)  Plaintiff's

case then was transferred from Detroit, Michigan to Pasadena, California. (R. 273).

Thereafter, Plaintiff's attorney, Paul F. Carrier, retired and attorney Thomas Bertino was

substituted as counsel. (R. 273-82.)  On June 19, 2006, ALJ Bernard Trembley

conducted a hearing in San Diego, California at which Plaintiff and his counsel failed to

appear. (R. 362-63.)   Because Plaintiff failed to appear at the hearing, ALJ Trembley

dismissed Plaintiff's request for hearing and dismissed the case.  (R. 283-86; 362-63.)

Plaintiff requested that the Appeals Council review ALJ Trembly's decision. (R. 273-74.)

On August 30, 2006, the Appeals Council remanded the case to an ALJ for further

proceedings. (R. 287-89.)

On February 8, 2007, ALJ Apolo Garcia, conducted a hearing in Ocala, Florida.

(R. 364-402.)  At the hearing, Plaintiff was represented by counsel and vocational

expert ("VE") Richard J. Hickey testified.  On March 16, 2007, the ALJ issued a decision

unfavorable to Plaintiff. (R. 22-32.)  Plaintiff timely filed a request for review with the

Appeals Council (R. 17), which denied his request for review. (R. 6-8.)  On January 2,

2009, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial

evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the

conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against the

---

[1] <u>See</u> 42 U.S.C. § 405(g).

[2] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835,
838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842
(1971)); *accord,* <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which

---

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

---

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. <u>SUMMARY OF THE RECORD EVIDENCE</u>

Plaintiff was forty-three (43) years old at the time of the hearing.  (R. 367.) Plaintiff has a high school education (R. 367) and has worked as a truck driver and in a

---

[17] <u>Phillips v. Barnhart</u>, 357 F. 3d 1232, 1243 (11th Cir. 2004); <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1077 (11th Cir. 1996); <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999); <u>Walker</u> at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[18] <u>Walker</u> at 1003.

[19] <u>Wolfe</u> at 1077-78.

[20] <u>See</u> <u>id</u>.

[21] <u>See</u> <u>Doughty</u> at 1278 n.2.

warehouse. (R. 369.) Plaintiff contends that he has been unable to work since March 18, 2002 due to pain in his right foot, tendonitis and nerve damage. (R. 66-67.)

In July 2001, Plaintiff was involved in an industrial accident in which a pallet landed on the back of his right heel. (R. 369.) Plaintiff was diagnosed with retrocalcaneal bursitis, and achilles tendinitis of the right ankle and underwent medical treatment, immobilization, steroid injections, physical therapy, and activity modification. (R. 107-212, 370.)

On November 30, 2001, David K. Davis, M.D. performed an independent medical evaluation. (R. 335-39.) His impression was chronic right achilles tendonitis and bursitis secondary to a work-injury; and that Plaintiff was 70% improved since the onset of his pain. Dr. Davis recommended physical therapy, steroid treatment and limited Plaintiff to light duty.

Beginning in March 2002, Plaintiff was seen by Allan M. Grant, M.D. (R. 242.) Dr. Grant's impression was achilles tendonitis bursitis as a direct cause from direct trauma. Dr. Grant noted that Plaintiff should be off work and begin an immediate course of outpatient physical therapy and oral anti-inflammatory medication and if that was unsuccessful, Plaintiff would be placed in a non weight bearing cast for total rest. On April 24, 2002, a cast was applied and Plaintiff was given a prescription for crutches and directed to have no weight bearing on his right foot. (R. 240.) On May 20, 2002, Plaintiff's cast was removed. (R. 239.) On August 1, 2002, Dr. Grant performed surgery for ostectomy of calcaneal tuberosity and debridement of Plaintiff's Achilles tendon. (R. 236-38.) On September 11, 2002, Plaintiff's cast was removed and he was sent to physical therapy to increase his range of motion.. (R. 233.) On December 16, 2002,

Plaintiff reported increasing numbness on the bottom of his foot. (R. 230.) On March 19, 2003, Dr. Grant noted that the main focus was entrapment of the tarsal tunnel and discussed the possibility of surgery. (R. 225.) On April 9, 2003, Dr. Grant opined that Plaintiff could not return to work with any type of walking or standing and could likely only perform sit down work. (R. 224.) Plaintiff did not have a second surgery.

On February 26, 2003, Plaintiff was seen by Jack Belen, M.D. for a consultative evaluation. (R. 243-46.) Dr. Belen's impression was chronic right achilles tendinitis, right tarsal tunnel syndrome, and status post right calcaneal surgery. He opined that Plaintiff was disabled from any work activity that requires him to do standing or walking; he must avoid having to go up on his toes on the right side; repeated stair climbing or descending and squatting are to be avoided; and he should have a primarily sedentary type of job.

On June 2, 2003, C. Christopher Stroud, M.D., performed an independent medical evaluation of Plaintiff. (R. 340-44.) Plaintiff reported cracking in his ankle, numbness in the plantar aspect of his foot, and discomfort in the posterior aspect of the heel. Dr. Stroud found that Plaintiff had reached maximum medical improvement and he did not recommend any further surgical or nonsurgical intervention, other than home stretching exercises, ice, heat and anti-inflammatory and pain control medication. (R. 340-41.) He recommended vocational rehabilitation to assess Plaintiff's re-entry into the work force and opined that Plaintiff could not currently lift any weight over 20 pounds; was restricted to walking for less than 15 minutes; and standing no more than one hour.

On October 29, 2004, A. Pennington, M.D. performed a consultative evaluation. (R. 249-52.) Plaintiff reported constant pain and intermittent numbness in his right foot. He reported soaking his foot in hot water at least 3 times per day for pain relief and that he cannot bear weight on his right foot. Dr. Pennington noted that Plaintiff walks with a "Cam Orthopedic Walker" on the right foot to reduce the pain so that he will be more stable with his gait. (R. 250.) Plaintiff reported that sometimes he uses a crutch. On examination, Plaintiff had muscle atrophy of the right ankle, foot and calf; decreased range of motion of the right ankle; and decreased sensation. Dr. Pennington opined that Plaintiff would have "difficulty clearing the floor" and that because it is necessary for him to wear the Cam Walker, it would be difficult for him to walk on uneven surfaces. Dr. Pennington further opined that Plaintiff could not perform climbing, jumping, squatting or stooping activities; he could perform activities with a "sit to stand option"; he could lift up to 8 pounds as necessary; and he can walk short distances but needs to rest after approximately 200 feet.

Plaintiff testified that he continues to have swelling and constant pain and he has difficulty walking because he has to walk to the side with no pressure on his toes. (R. 369.) He soaks his foot in the bathtub on a daily basis to relieve the pain, elevates his foot about 80% of the day, takes over-the-counter pain medication, and uses crutches sometimes. (R. 372, 373, 377.) He testified that for financial reasons he has not had any treatment for his right heel for a couple of years. (R. 371.) Plaintiff testified that he can stand for ten to fifteen minutes and then he needs to sit down. (R. 374.) He testified that due to the pain he has trouble concentrating and focusing. (R. 384.)

On November 9, 2004, non-examining state agency consultant, William K. Joh, M.D., completed a Physical RFC Assessment. (R. 259-66.) He opined that Plaintiff could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit for a total of about 6 hours in an 8-hour workday; and push and/or pull without limitation. He limited Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching and crawling.

In August 2005, Plaintiff was hospitalized for seven days after a suicide attempt. (R. 331-32.) He reported that he had become overwhelmed with life's stress – i.e., divorced, evicted and no income. He also reported poor sleep, frustration, and feeling hopeless. He was diagnosed with major depressive disorder, single type; possible alcohol abuse; and passive aggressive personality. At the time of admission his GAF score was 20 and it was 55 at the time of discharge. Upon discharge, Plaintiff felt much brighter, was positive about the future and denied any suicidal intention. Plaintiff was prescribed Lexapro and strongly advised not to drink alcohol with his medication. His parents were going to take him home with them to Florida and they were going to help him with his financial and personal concerns.

At the hearing, Plaintiff testified that he is depressed every day. (R. 378.) He reported being moody, not wanting to talk to anybody, withdrawing, losing his appetite, crying and staying in bed for the entire day, once a week. (R. 378-80.) During the day, Plaintiff watches television and uses the computer. (R. 380-82.) Plaintiff testified that he does not do any household chores nor does he drive. (R. 381-82.) Plaintiff testified that he attempted a security job where he was sitting in a security check and standing once in awhile but that he only lasted two hours due to pain. (R. 388-89.) Plaintiff testified

that he cannot perform a sit down job due to the pain in his foot and the required concentration. (R. 389.)

In his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff suffered from chronic right Achilles tendonitis and right tarsal tunnel syndrome. (R. 27.) The ALJ specifically found that Plaintiff's depression was a non severe impairment. (R. 28.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (Id.)

The ALJ then found that Plaintiff retained the RFC to sit for up to 8 hours in an 8-hour workday; he could lift up to at least 8 pounds occasionally; he could walk for short distances of up to 200 feet; he has no restrictions of gross or fine manipulation; he requires work with a sit and stand option; he has difficulties walking on uneven surfaces and should avoid squatting or stooping. (R. 29-31.) The ALJ then found that Plaintiff could not perform his past relevant work.

Relying upon the testimony of the vocational expert, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy – i.e., Dispatcher (DOT 239.367-030), which has a sedentary exertional requirement and an SVP of 3; Warehouse Worker (DOT 249.587-014), which has a sedentary exertional requirement and is unskilled; and a Material Clerk (DOT 222.387-034), which has a sedentary exertional requirement and an SVP of 4. Thus, the ALJ found that Plaintiff was not disabled because Plaintiff could perform other work that exists in significant numbers in the national economy.

10

# IV.  DISCUSSION

## A.    *The ALJ properly evaluated Plaintiff's mental impairment*

Plaintiff argues that the ALJ failed in several ways to properly evaluate Plaintiff's mental impairment.  First, Plaintiff contends that the ALJ failed to utilize the psychiatric review technique in evaluating Plaintiff's mental impairments. The Eleventh Circuit has held that an ALJ is required to comply with regulations for evaluating mental impairments where the claimant presents a colorable claim of a mental impairment.[22] In this case, the ALJ considered all of the relevant evidence related to Plaintiff's mental condition and determined that his "depression does not significantly limit his ability to perform basic work like activities."  (R. 28.)  Because Plaintiff failed to provide evidence establishing a colorable claim of a mental impairment, the ALJ was not required to comply with the regulations for the evaluation of mental impairments.

As the ALJ correctly noted, the only evidence of a mental impairment was a brief hospitalization in 2005 after Plaintiff attempted to commit suicide.  The ALJ found that this was an isolated episode and there is no other evidence of a mental impairment. With regard to the episode, Plaintiff reported that he took an overdose of pills after becoming overwhelmed with life's stress.  He also reported poor sleep, frustration, and feeling hopeless. He was diagnosed with major depressive disorder single type, possible alcohol abuse, and passive aggressive personality.  Plaintiff was treated with therapy and medication and strongly advised not to drink alcohol with his medication. Plaintiff reached maximum medical improvement with the inpatient treatment and, upon

---

[22] See Moore v. Barnhart, 405 F.3d 1208 (11th Cir. 2005.)

discharge, felt much brighter, was positive about the future and denied any suicidal intention.

At the time of admission to the hospital, Plaintiff's GAF was assessed at 20 and it was assessed at 55 at the time of discharge. To the extent Plaintiff suggests that the GAF scores, standing alone, evidence a severe impairment, that argument misconstrues the significance of the GAF scores. According to the DSM-IV-TR, a GAF score reflects the examiner's opinion regarding an individual's symptoms or possible difficulty in social, occupational, or school functioning.[23] However, a GAF score "does not itself necessarily reveal a particular type of limitation and 'is not an assessment of a claimant's ability to work. '"[24] The Commissioner has specifically declined to endorse the GAF scale for use in the disability programs, and has stated that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings."[25] Accordingly, an opinion regarding GAF, even if required to be accepted as valid, would not translate into a specific finding in regard to functional limitations.

Moreover, there was no history of mental health concerns prior to the August 2005 hospitalization, nor was there any evidence of further treatment for any mental problems after that hospitalization. There is no evidence that Plaintiff was referred for mental health treatment nor has he received or sought any additional counseling or therapy for anxiety or depression. The fact that Plaintiff has not received or required

---

[23] See DSM-IV-TR at 32-34.

[24] See e.g., Ward v. Astrue, 2008 WL 1994978, at *3 (M.D. Fla. 2008).

[25] Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50,764-65 (Aug. 21, 2000.)

any further mental health treatment supports the ALJ's conclusion that Plaintiff's mental impairment was not severe.[26]   Finally, Plaintiff has failed to point to any record evidence showing that he had any work-related restrictions due to his mental impairment.  Accordingly, the ALJ's finding at the second step of the sequential disability evaluation that Plaintiff does not have a severe mental impairment is supported by substantial record evidence.

Plaintiff also argues that the ALJ failed to develop the record regarding Plaintiff's mental impairments, and that he should have obtained a consultative examination. It is well-settled that an ALJ has a basic obligation to fully and fairly develop the record.[27] This obligation exists whether or not a claimant is represented by counsel.[28]  As a hearing is non-adversarial in nature,[29] the duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.[30]  The Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision.[31] As discussed above, the evidence in this case failed to establish that Plaintiff had a severe mental impairment.   Because the record was sufficient for the ALJ to make an

---

[26] See e.g., Atterberry v. Secretary of Health and Human Services, 871 F.2d 569, 571 (6th Cir. 1989.)

[27] See Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981); see also Zaldivar v. Apfel, 81 F. Supp. 2d 1353, 1359 (N.D. Ga. 2000).

[28] Zaldivar, 81 F. Supp 2d at 1359.

[29] Id.

[30] See Mason v. Barnhart, 63 Fed. Appx. 284, 2003 WL 1793283, *2 (9th Cir. 2003).

[31] See Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984.)

informed decision, there was no need for the ALJ to order a consultative psychological examination.

Plaintiff also argues that the ALJ should have included the limiting effects of his mental condition in his RFC finding. A condition is relevant only to the extent it limits the Plaintiff's ability to work.[32] After considering all of the evidence, the ALJ limited Plaintiff to a reduced range of sedentary work. While Plaintiff testified that he is moody, withdrawn, sleeps a lot, and has trouble concentrating, Plaintiff failed to show that he had work-related mental limitations greater than those in the ALJ's RFC finding or that his limitations would interfere with his ability to perform the jobs identified by the VE.

Accordingly, for all of these reasons, the ALJ did not err in his consideration of Plaintiff's mental impairment.

**B.      The ALJ Properly Relied Upon The VE's Testimony At Step Five**

Because the ALJ found that Plaintiff could not return to his prior work, the burden of proof shifted to the Commissioner to establish that Plaintiff could perform other work that exists in the national economy.[33] This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"].[34] However, exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has

---

[32] See Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005.)

[33] Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995).

[34] Foote, 67 F.3d at 1558.

a non-exertional impairment that significantly limits basic work skills."[35]   In almost all of such cases, the Commissioner's burden can be met only through the use of a VE.[36]

In this case, the VE testified that based upon Plaintiff's limitations (consistent with the ALJ's ultimate RFC determination), Plaintiff could perform three jobs – material clerk, dispatcher, and a cutter and paster of press clippings.[37]  Plaintiff argues that the ALJ erred in relying upon this testimony in several respects.

First, Plaintiff argues that the ALJ's statement in the Decision that he was seeking VE testimony to determine the extent to which Plaintiff's limitations erode the "unskilled sedentary occupational base" is inconsistent with the VE's testimony and the ALJ's findings that Plaintiff could perform work at a higher skill level – i.e., dispatcher SVP 3 and material clerk SVP 5.  However, the ALJ did not limit Plaintiff to unskilled work in his RFC determination, nor did he limit the VE's testimony to unskilled work. (R. 29, 394-97.)   Moreover, while the VE identified skilled work, he also identified work that was unskilled – i.e., cutter and paster of press clippings.

Second, Plaintiff argues that there is an inconsistency between the ALJ's finding that Plaintiff cannot stoop or crouch and his conclusion that he can perform the job of a material clerk. The VE testified that material clerks perform mostly clerical tasks and

---

[35] <u>Walter v. Bowen,</u> 826 F.2d 996, 1002-3 (11th Cir. 1987).

[36] <u>Foote</u>, 67 F.3d at 1559.

[37]  In his Decision, the ALJ identified this position as a Warehouse Worker and provided the DOT number for "Cutter-And-Paster, Press Clippings."  Contrary to Plaintiff's suggestion, the VE did not identify warehouse worker and cutter and paster of press clippings as two distinct jobs.  Rather, the VE testified that the cutter and paster job was a type of warehouse job that a person with Plaintiff's limitations could perform.  (R. 395.) The VE gave the DOT number for the cutter and paster of press clippings job and stated that it was an unskilled and sedentary position.

15

work in various companies and warehouses where they keep track of inventory; and that it is sedentary, semi-skilled work with an SVP of 4.   There is no dispute that the DOT number for material clerk cited by the VE – DOT number 222.368-034 -- was not correct.   The DOT does not list a material clerk job with this number.  In his decision, the ALJ cited to the job of material clerk DOT section 222.387.034.  The description of the job in the DOT appears to consistent with the VE's testimony regarding the job of material clerk – except that the SVP is 5.[38]  The job of material clerk requires occasional stooping and crouching.  Thus, based on Plaintiff's functional limitations, he cannot perform the work of a material clerk as defined by the DOT.

However, even though Plaintiff may not be able to perform the work of a material clerk or dispatcher, the VE identified another job that Plaintiff could perform – cutter and paster of press clippings (sedentary, unskilled, DOT number 249.587-014) with approximately 1,100 to 1,200 jobs in Florida and 21,000 to 22,000 jobs nationally. Plaintiff has not challenged in his brief the ALJ's finding that he cannot perform the job of cutter and paster of press clippings.  Thus, even if Plaintiff was correct that he could not perform the jobs of material clerk and dispatcher, the Commissioner, nonetheless, satisfied his burden of showing that Plaintiff retains the RFC to perform at least one job (cutter and paster) existing in significant numbers in the national economy.

--------------------------------------------------------

[38] **MATERIAL CLERK (clerical) alternate titles: stock-record clerk**
Compiles and maintains records of quantity, cost, and type of material received, stocked, and issued, and prepares material requisitions; Compares information on requisitions, invoices, and shipping notices to material received or issued to verify accuracy of order.  Compiles and maintains inventory of material received, stocked, and issued [INVENTORY CLERK (clerical) 222.387-026].  Prepares requests for procurement of material.  May inspect, accept, or reject material received.  May mark identifying information on material.  May be designated according to location of goods as Warehouse-Record Clerk (clerical).

Next, Plaintiff argues that the ALJ's RFC is flawed because it contains vague and non-specific language -- i.e., that Plaintiff is limited to working at a job with a "sit and/stand option" and that he has "difficulties walking on uneven surfaces."[39]    To support this argument, Plaintiff relies on SSR 96-9p, which provides that, where an individual needs to alternate sitting and standing the "RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."[40] While the ALJ merely found that Plaintiff requires work with a sit and stand option, any failure by the ALJ to make a finding as to the frequency of Plaintiff's need to alternate sitting and standing would be irrelevant because the VE testified that the jobs of material clerk, dispatcher and cutter and paster could be performed either sitting or standing and that while the jobs are customarily done in a seated position "the option is to stand in regard to the duties."  (R. 397.)[41]

Plaintiff also argues that the ALJ's statement that Plaintiff "has difficulties walking on uneven surfaces" is vague and non-specific and fails to address what

---

[39] Plaintiff cites three cases to support his position. See Castrejon v. Apfel, 131 F. Supp. 2d 1053 (E.D. Wisc. Jan. 8, 2001); Coleman v. Astrue, 523 F.Supp.2d 1264 (D. Kansas October 25, 2007); and Arocho v. Sec. of HHS, 670 F.2d 374 (1st Cir. 1982.)  These three courts reversed (at least in part) because the ALJ found the claimant required a sit/stand option but failed to specify the individual's need to alternate sitting and standing in this case is irrelevant based on the VE's testimony that the identified jobs could be performed either sitting or standing.

[40] http://www.socialsecurity.gov/OP_Home/rulings/di/01/SSR96-09-di-01.html.

[41] On cross examination, the VE testified that the material clerk job might be affected by the sit/stand option because there might be computer work that would require Plaintiff to be seated.  (R. 400.) However, as discussed above, even if the material clerk position is removed, the Commissioner satisfied his burden of showing that Plaintiff retains the RFC to perform jobs existing in significant numbers in the national economy.

Plaintiff can still do despite his functional limitations and fails to accurately reflect the evidence regarding Plaintiff's ability to walk.

As an initial matter, the record evidence supports the walking limitations found by the ALJ in his RFC determination. The ALJ found that Plaintiff could walk for short distances of up to 200 feet and that he has difficulties walking on uneven surfaces and should avoid squatting or stooping. On October 29, 2004, Dr. Pennington found that because Plaintiff must wear a Cam Walker, he would have difficulty walking on uneven surfaces. He also noted that Plaintiff would have "difficulty clearing the floor." Nevertheless, Dr. Pennington concluded that Plaintiff could walk short distances but would need to rest after approximately 200 feet. On February 26, 2003, Dr. Belen opined that Plaintiff should have a primarily sedentary type of job and that he could not perform any work that required him to do standing or walking and that he had to avoid going up on his toes on the right side, repeated stair climbing or descending and squatting. (R. 245.)

Plaintiff argues that the record evidence shows that Plaintiff's ambulation limitations are not limited to uneven surfaces and that he uses prescription crutches regardless of the surface. (R. 240, 250, 377.) However, there are only two references to crutches in the medical records. On April 24, 2002, Plaintiff was given a prescription for crutches, the same day that a cast was applied to his right leg and he was not directed to avoid bearing weight on his right foot. (R. 240.) On October 29, 2004, Plaintiff reported to Dr. Pennington that "sometimes he uses a crutch." (R. 250.) At the hearing, Plaintiff testified that he was not "really us[ing] [crutches] right now because

I'm not on my feet" but that he would need them if he was up on his feet because he would need support when he loses feeling in his foot.  (R. 377.)

As such, Plaintiff has failed to point to any record evidence (nor has the Court found any) suggesting that his walking limitations were more severe than those in the RFC.  Moreover, Plaintiff has failed to explain how further walking limitations would impact Plaintiff's ability to perform the three jobs identified by the VE – all three of which are customarily performed in a seated position.

Plaintiff contends that the ALJ failed to include all of the limiting effects of Plaintiff's chronic right Achilles tendonitis and right tarsal tunnel syndrome in the RFC and, thus, the VE was not given a complete hypothetical.  Specifically, Plaintiff focuses on his testimony that he spends about 80% of his day with his foot elevated for a "couple of hours" at a time.   However, Plaintiff fails to point to any medical evidence supporting the Plaintiff's testimony and the Court has been unable to find any medical evidence in the record to support this assertion.  Moreover, the ALJ found that Plaintiff's testimony regarding the intensity, persistence and limiting effects of symptoms was not entirely credible based on the medical records.  Accordingly, the ALJ did not err by failing to include in his RFC determination that Plaintiff must elevate his foot.

Finally, Plaintiff argues that the case should be reversed and remanded because the ALJ failed to explain and resolve various conflicts between the VE's testimony and the DOT as required by Social Security Ruling ("SSR") 00-04p.  Specifically, Plaintiff contends that the ALJ should have asked the VE to explain the contradictory DOT numbers for material clerk; how a hypothetical limited to sedentary work meets a

19

medium exertional job; clarify his testimony regarding the sit/stand option as it applies to the material clerk position; which jobs are precluded with the requirement of additional breaks; how a complete preclusion of stooping and climbing, could include the warehouse worker position; and why semi-skilled and skilled jobs are part of the unskilled occupational base. Plaintiff's argument that the ALJ failed to resolve inconsistencies with the DOT is not supported by controlling case law.

Prior to the promulgation of SSR 00-04p, the Eleventh Circuit considered the issue of how to resolve a conflict between the testimony of a VE and the DOT.  In Jones v. Apfel,[42] the Eleventh Circuit held that ". . . when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT."  The Court reasoned that the VE's testimony may be followed because the DOT "is not the sole source of admissible information concerning jobs" and that by its own wording "the SSA itself does not consider the DOT dispositive."  Accordingly, under Jones an ALJ may rely upon the testimony of a VE without first resolving any conflict with the DOT.

Although SSR 00-04p was promulgated after Jones was decided, it does not undo the rule in Jones[43] nor does SSR 00-04p expressly mandate that an ALJ has a duty to independently investigate whether there is a conflict between the VE's testimony and the DOT.   Rather, SSR 00-04p merely obligates the ALJ to ask the VE

_____

[42] 190 F.3d 1224, 1229-30 (11th Cir. 1999.)

[43] After the promulgation of SSR 00-04p, the Eleventh Circuit held in an unpublished opinion that because social security rulings do not bind the courts, even where an inconsistency exists between the testimony of a VE and the DOT, an ALJ is entitled to rely upon the testimony of the VE, without first resolving the conflict. See Miller v. Comm'r of Soc. Sec., No. 07-11364, 2007 WL 2461771, at *2 (11th Cir. Aug. 31, 2007.)  The Court reasoned that the rule in Jones – that the "VE's testimony trumps the DOT" – is binding precedent in this Circuit, notwithstanding the promulgation of SSR 00-4p.

if there is a conflict and if the VE identifies a conflict the ALJ is required then – and only then – to address the conflict in his decision and resolve it.[44]

Here, the ALJ specifically asked the VE during the hearing, "is your testimony consistent with the Dictionary of Occupations Titles and the companion publication the Selected Characteristics of Occupations?" (R. 398-99.) The VE responded "[i]t is, Your Honor, yes." (R. 399.) During the hearing, the VE did not identify any conflicts between her testimony and the DOT. Nor did the Plaintiff (who was represented by counsel) challenge the VE's testimony regarding the contradictory DOT numbers for material clerk; how a hypothetical limited to sedentary work meets a medium exertional job; how a complete preclusion of stooping and climbing, could include the warehouse worker position; or why semi-skilled and skilled jobs are part of the unskilled occupational base.

Plaintiff contends that the ALJ had an obligation to clarify the VE's testimony regarding the sit/stand option as it applies to the material clerk position because the VE's testimony on this issue was inconsistent. However, SSR 00-04p focuses on the ALJ's obligation to independently investigate whether there is a conflict between the VE's testimony and the DOT, not whether the VE's testimony is internally inconsistent. Even so, as discussed above, if the material clerk position is removed, the

---

[44] See, e.g., Martin v. Commissioner of Social Security, 170 Fed. Appx. 369, 2006 WL 509393, at *4-5 (6th Cir. 2006)(unpublished)(holding that "[n]othing in SSR-004p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct" and therefore "[b]ecause [theVE] did not bring the conflict to the attention of the ALJ, the ALJ did not need to explain how the conflict was resolved."); Haas v. Barnhart, 91 Fed. Appx. 942, 947-48 (5th Cir. 2004)(where conflict not brought to the attention of the ALJ it was not reversible error for the ALJ to rely upon the testimony of the VE); Gibbons v. Barnhart, 85 Fed. Appx. 88, 93 (10th Cir. 2003)(no error under SSR 004p where the VE did not identify conflicts with the DOT); Brijbag v. Astrue, No. 8:06-cv-2356-T-MAP, 2008 WL 276038, at *2 (M.D. Fla. Jan. 31, 2008)("the ALJ need not independently corroborate the VE's testimony and should be able to rely on such testimony where no apparent conflict exists with the DOT"); Lembke v. Barnhart, 2006 WL 3834104 *15 (W.D. Wis. 2006)(reversal is not warranted where plaintiff identifies a conflict after the hearing but during the hearing no conflict was identified so long as the ALJ complied with SSR-004p by asking the VE at the hearing to identify conflicts);

Commissioner satisfied his burden of showing that Plaintiff retains the RFC to perform at least one job existing in significant numbers in the national economy.

Likewise, Plaintiff contends that the ALJ failed to clarify inconsistencies in the VE's testimony regarding additional breaks and whether the identified jobs would allow Plaintiff to elevate his legs whenever needed. While there may have been inconsistencies in the VE's testimony, such inconsistencies are irrelevant because the ALJ made no finding in his RFC determination that Plaintiff needed additional breaks or that he must elevate his legs whenever needed.

Accordingly, because the ALJ had no obligation to resolve a conflict that was not identified at the hearing, and that was not otherwise apparent - and in view of the fact that the law in this Circuit provides that an ALJ may rely upon the testimony of a VE even if it is in conflict with the DOT - the ALJ did not err by relying upon the testimony of the VE to support his determination that Plaintiff was not disabled because there were a substantial number of jobs available in the national economy which Plaintiff could perform at his given RFC.

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). The Clerk is directed to enter final judgment in favor of the Defendant consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on December 1, 2009.

_____
GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel